**UNITED STATES of America,**
**Plaintiff,**

v.

**A.F.F., Juvenile, Defendant.**

**No. 00–CR–20048–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

April 10, 2001.

*REDACTED OPINION AND ORDER DENYING GOVERNMENT'S MOTION FOR REHEARING OR RECONSIDERATION* [1]

LAWSON, District Judge.

The defendant, A.F.F., was charged in a juvenile information with first-degree murder in the death of a ten-week-old infant who was left in his care. The crime was allegedly committed in Indian country, resulting in jurisdiction lodged in this Court. 18 U.S.C. §§ 1152, 1151. Thereafter, the government filed a motion to transfer the proceeding so that A.F.F. would be tried as an adult. The government relied on the discretionary transfer language of 18 U.S.C. § 5032 as its sole ground for the motion.

On March 27, 2001, this Court filed an opinion and order denying the government's motion to transfer the prosecution of the defendant from juvenile to adult status.

The government has now filed a motion for rehearing or reconsideration of the Court's decision on the motion to transfer. The government cites three grounds for granting the rehearing motion: (1) this Court's apparent misapprehension of the possible maximum penalty that could be imposed in this case; (2) the Court's mis-understanding of the maximum period of jurisdiction in the disposition of a juvenile; and (3) suggesting for the first time in these proceedings that the mandatory transfer provision of 18 U.S.C. § 5032 applies to the defendant.

As to the first two grounds, the Court finds that the government has failed to demonstrate a defect by which the Court was misled or which, upon correction, would lead to a different result. As for the last ground, the Court finds that the issue of mandatory transfer was not raised in a proper or timely fashion, and further that the defendant's prior record does not place him within the scope of that section of the statute. The Court, therefore, will deny the motion.

## I.

The government's motion is based on E.D. Mich. LR 7.1(g)(3),[2] which states:

> [T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

Thus, the Court will grant a motion for reconsideration only if the moving party shows (1) a "palpable defect," (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). "Palpable" is defined as "readily or plainly seen," "tangible," or

---

**1.** This redacted opinion and order is unsealed and shall be docketed. The original opinion and order is dated April 10, 2001.

**2.** LR 7.1 governs motion practice in civil cases. LCrR 12.1(a) states that "[m]otions in criminal cases shall be filed in accordance with the procedures set forth in LR 7.1."

"obvious." Random House College Dictionary 959 (Rev.Ed.1982).

■■■■ However, a motion for reconsideration is not an appropriate vehicle for raising new facts or arguments. *See Salopek v. Comm'r of Internal Revenue*, No. 99–9012, 2000 WL 350263, at *2 (10th Cir. Apr.5, 2000) (unpublished) ("[A] motion for reconsideration is an inappropriate vehicle for advancing new arguments or facts which could. have been raised in prior briefing."); *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (motions under Fed.R.Civ.P. 59(e) "are aimed at *re* consideration, not initial consideration"), citing *FDIC v. World University Inc.*, 978 F.2d 10, 16 (1st Cir.1992). This is especially true where the sole ground for relief advanced in the original motion required an entirely different analysis of the facts and applicable law than the new argument raised for the first time in the reconsideration motion.

## II.

### A.

The government first argues that because this Court's opinion recites that the possible statutory penalties for first-degree murder include death, the Court was therefore mislead into believing that denial of the transfer motion was a means of avoiding imposing the death penalty upon A.F.F., whereas the death penalty was not available in all events because A.F.F. was seventeen years old on the date of the offense. This argument is meritless.

The Court did note, correctly, that first-degree murder carries a potential penalty of death in adult prosecutions. *See* 18 U.S.C. § 1111. This observation was made in the context of, and to illustrate, the Court's statement that first-degree murder is "one of the most serious offenses known to the law." Opinion and Order Denying Government's Motion to Transfer Proceedings to Adult Criminal Prosecution at 7. The seriousness of the offense was a factor which this Court was obliged to consider in adjudicating the government's motion for discretionary transfer under 18 U.S.C. § 5032. The fact that 18 U.S.C. § 3591 prohibits the execution of defendants who commit their crimes while under eighteen years of age does not diminish the fact that a crime carrying the death penalty is a serious offense.

A fair reading of the Court's statement, by itself and in context, does not yield the suggestion that the Court was misled or that a defect exists in that portion of the opinion. The government's argument that rehearing is appropriate on this basis is insubstantial.

### B.

■■■ The government also argues that the Court was wrong in stating that it had the authority to commit a juvenile to detention for longer than five years despite the fact that A.F.F. will attain his majority in less than three years. The government is technically correct. The applicable provision of 18 U.S.C. § 5037(c)(2)(A) authorizes the commitment of A.F.F. for up to five years.

The government's related argument, that this error undergirded a later conclusion that detention could be ordered for "as long as a court deemed necessary," is a mischaracterization of the Court's opinion. The latter statement in the Court's opinion was made for the purpose of describing the policies of the institutions which offered programs within the juvenile system which could treat the defendant's behavioral problems. Once again, the Court was obliged to consider this factor under 18 U.S.C. § 5032 because the government moved for discretionary transfer.

The Court acknowledges that its statement on the length of authorized confinement was incorrect, but this error did not mislead the Court, nor does it alter the Court's evaluation of the factors for discretionary transfer.

### C.

In its motion for reconsideration, the government raises for the first time the contention that the mandatory transfer provisions of 18 U.S.C. § 5032 apply in this case. The government offers no reasons for its failure to raise this argument in its initial motion.

█ As noted earlier, arguments raised for the first time in a motion for a reconsideration ought not to be entertained unless there is a credible showing why the argument could not have been raised previously. There is no suggestion that the information which forms the basis of the government's argument was newly discovered, nor could there be. To constitute "newly discovered evidence" as a ground for a motion for relief from a judgment or order under Fed.R.Civ.P. 59(e),[3] the evidence must have been previously unavailable. *See GenCorp, Inc. v. Am. Inter'l Underwriters,* 178 F.3d 804, 833 (6th Cir. 1999).

█ The question of mandatory transfer, therefore, has not been formally raised. The pertinent portion of 18 U.S.C. § 5032 states:

[A] juvenile who is alleged to have committed an act after his sixteenth birthday which if committed by an adult would be a felony offense that has an element thereof the use, attempted use, or threatened use of physical force against the person of another, or that, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense, or would be an offense described in section 32, 81, 844(d), (e), (f), (h), (i) or 2275 of this title, subsection (b)(1)(A), (B), or (C), (d), or (e) of section 401 of the Controlled Substances Act, or section 1002(a), 1003, 1009, or 1010(b)(1), (2), or (3) of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 953, 959, 960(b)(1), (2), (3)), and who has previously been found guilty of an act which if committed by an adult would have been one of the offenses set forth in this paragraph or an offense in violation of a State felony statute that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed, shall be transferred to the appropriate district court of the United States for criminal prosecution.

18 U.S.C. § 5032. Although, by its terms, the statute does not require a motion or a hearing to effectuate mandatory transfer, the appellate courts have held that these procedures are required. *See United States v. Juvenile Male # 1,* 47 F.3d 68, 69 (2d Cir.1995); *United States v. David H.,* 29 F.3d 489, 491 n. 5, 492 n. 7 (9th Cir. 1994); *United States v. Brian N.,* 900 F.2d 218, 221 n. 4 (10th Cir.1990). The legislative history likewise supports this interpretation. H.R.Rep. No. 98–1030, 98th Cong.,

---

**3.** A motion for relief from a judgment filed under Fed.R.Civ.P. 59(e) is analogous to a motion for reconsideration under LR 7.1(g). *See Moody v. Pepsi–Cola Metro. Bottling Co.,* 915 F.2d 201, 206 (6th Cir.1990). However, it is not the purpose of motions under Rule 59(e) "to renew arguments already considered and rejected by a court or to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue." *McConocha v. Blue Cross Blue Shield Mut. of Ohio,* 930 F.Supp. 1182, 1183 (N.D.Ohio 1996) (internal quotations and citation omitted).

2d Sess. (1984), reprinted in 1984 U.S.C.C.A.N. 3382, 3531, states that "[the mandatory transfer provision] provides that in ... cases involving repeat offenders ... transfer of the case for prosecution, *upon motion of the government*, is to be mandatory." (Emphasis added).

■ In this case, the government failed to move for mandatory transfer on a timely basis. Therefore, the issue is not properly before the Court.

Furthermore, mandatory transfer is not appropriate in this case because all of the prerequisites of the statute have not been satisfied. Mandatory transfer occurs when (1) the defendant is charged with committing one of the statutorily enumerated or categorized felonies; (2) the defendant was over sixteen years of age at the time of the offense; and (3) the defendant had previously been found guilty of committing an offense which, if committed by an adult, would have been one of the enumerated or categorized offenses. 18 U.S.C. § 5032.

Although first-degree murder is not one of the offenses listed by reference to a statutory section, it certainly falls within the category of "a felony offense that has an element thereof the use, attempted use, or threatened use of physical force against the person of another...." Furthermore, the defendant was over 16 years of age at the time the offense was committed. Therefore, the first two requirements for mandatory transfer have been met.

To establish the third element, the government observes that on September 27, 1999, the defendant was convicted of second-degree home invasion when he kicked in the door to his grandmother's house. According to the government's argument, since "generic burglary" is a proper predicate offense for a sentence enhancement as a "violent felony" under 18 U.S.C. § 924(e), *see Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), this crime should also constitute a felony under Michigan law that "has as an element the use, attempted use, or threatened use of physical force against the person of another or, by its very nature, involves a substantial risk that physical force against the person of another may be used in committing the offense." Government's Motion for Rehearing or Reconsideration at 4.

1.

■ Home invasion in the second degree is defined by Mich.Comp.L. § 750.110a(3) (1999), which states:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the second degree.

The elements of this crime are (1) a breaking, (2) an entry, and (3) specific intent to commit a felony or a listed crime. *See People v. Toole*, 227 Mich.App. 656, 658, 576 N.W.2d 441 (1998); *People v. Adams*, 202 Mich.App. 385, 390, 509 N.W.2d 530 (1994). The statutory definition of this offense does not *require* proof of the use or threatened use of physical force against the person of another as a necessary element, although the crime itself could involve such an element if the charged intent was to commit an "assault."

■ Generally, when determining whether an offense will serve as a statutory predicate, appellate courts prescribe a categorical approach, which discourages an

examination of underlying conduct. For example, in *United States v. Harris,* 165 F.3d 1062 (6th Cir.1999), the Court was called upon to determine whether a conviction for "escape" was a proper predicate offense which triggered the application of the career offender enhancement provisions in U.S. Sentencing Guidelines Manual § 4B1.1. The answer turned on whether the crime "otherwise involved conduct that presents a serious risk of physical injury to another...." U.S. Sentencing Guidelines Manual § 4B1.2(1)(ii). The Court stated that it was not free to conduct a "broad factual inquiry" into the underlying facts of the case that led to the conviction, but rather must take a "categorical" approach.

> [I]t requires the court to base its determination on the statutory definition of the crime. The court may review the indictment to see what specific conduct was charged, however, and any relevant plea agreement may be examined as well.

165 F.3d at 1068 (citations omitted). As the Court noted, when analysis of the statutory elements itself does not yield an answer, it is permissible to look to the charge in a given case.

██ In this case, the charging document alleges the following:

> On or about 04/12/1999 in Mt. Pleasant, [the defendant] did break and enter a dwelling ... with intent to commit a larceny therein....

The charge in this case was that the defendant broke into a house intending to commit larceny, a property crime. Contrary to the government's argument, the crime does not contain an *element* of actual or threatened use of physical force against the person of another. On this basis, second-degree home invasion is not an adequate predicate offense for a mandatory transfer.

2.

Citing *Taylor v. United States, supra,* the government contends that second-degree home invasion, or "generic burglary," is a "violent felony" and therefore a proper predicate offense under the mandatory transfer provision of 18 U.S.C. § 5032. The rule of *Taylor v. United States,* however, does not support the government's argument.

In that case, the court was faced with the task of determining the meaning of "burglary" as a predicate offense under the career criminal statute, 18 U.S.C. § 924(e). Section 924(e) states:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for 2148 a violent felony or a serious drug offense, or both ... such person shall be fined not more than $25,000 and imprisoned not less than fifteen years ...
>
> (2) As used in this subsection—
>
> .    .    .    .    .
>
> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e). Because the then-recent iteration of the statute left "burglary" undefined, and because many different common law and statutory definitions of burglary existed in the several states, the Court was required to discern Congressional intent when it included that term in § 924(e).

The Court observed that, according to legislative history, burglary was not a crime against the person, but by its very nature was a *property* crime. 495 U.S. at 587, 110 S.Ct. 2143. The Court quoted language from H.R.Rep. No. 99–849 (1986) which indicated that "[t]he other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of 'violent' felony." *Id.* (Emphasis by the Court). The Court observed:

> The debate at the 1986 hearings centered upon whether any property crime should be included as predicate offenses, and if so, which ones.

*Id.* at 589, 110 S.Ct. 2143.

The Court considered the defendant's argument that it should narrowly confine the definition of "burglary" to those offenses which involve a risk that physical force against another person may be used in committing the crime. In rejecting that argument, the Court stated:

> Petitioner essentially asserts that Congress meant to include as predicate offenses only a subclass of burglaries whose elements include "conduct that presents a serious risk of physical injury to another," over and above the risk inherent in ordinary burglaries. But if this were Congress' intent, there would have been no reason to add the word "burglary" to § 924(e)(2)(B)(ii), since that provision already includes *any* crime that "involves conduct that presents a serious potential risk of physical injury to another." We must assume that Congress had a purpose in adding the word "burglary" to H.R. 4885 before enacting it into law. The most likely explanation, in view of the legislative history, is that Congress thought that certain general categories of property crimes—namely burglary, arson, extor-

tion, and the use of explosives—so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.

*Id.* at 597, 110 S.Ct. 2143.

The Court held that, for sentencing enhancement purposes, "burglary" meant generic burglary, that is, "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. 2143.

Unlike § 924(e), the mandatory transfer language of § 5032 does not contain a definition of "violent felony." Rather, it describes as predicate offenses those crimes which constitute violence against the person, not against property. Not all burglaries are crimes of violence against the person, nor are all burglaries crimes which "involve[ ] a substantial risk that physical force against the person of another may be used in committing the offense...." 18 U.S.C. § 5032. As observed by the Court in *Taylor*, some burglaries can involve the risk of violence against a person, such as when a dwelling is occupied at the time of entry. But the defendant in this case was not charged with such a crime.

In Michigan, burglaries which carry a substantial risk of violence to the person of another are charged as first-degree home invasion under Mich.Comp.L. § 750.110a(2), which states:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permis-

sion with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.

(b) Another person is lawfully present in the dwelling.

A.F.F. was not charged with or convicted of first-degree home invasion. It was not alleged that he was armed or that someone else was in the dwelling at the time he kicked in the door. Assuming *arguendo*, that any break-in could theoretically involve the threat of personal violence, A.F.F.'s prior crime still does not pass muster because the mandatory transfer provision of § 5032 requires a *substantial* risk that physical force may be threatened or used. If Congress had intended to include all burglaries as predicate offenses which would trigger the mandatory transfer section of the statute, it could have explicitly stated as much when it amended the statute in 1994, subsequent to the Supreme Court's decision in *Taylor*. Categorically, first-degree home invasion constitutes a crime which involves a substantial risk of personal violence. Second-degree home invasion, where the charged intent does not include assault, does not.

Consequently, even if the issue of mandatory transfer were timely and properly raised by the government, the motion, of necessity, would have been denied.

### III.

The government has not demonstrated a palpable error in this Court's opinion and order filed March 27, 2001 which was misleading, or which, if decided differently, would lead to the opposite result.

Accordingly, the government's Motion for Rehearing or Reconsideration is **DENIED**.