**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lourele ROBERTS, also known as
Marcus Turner, Defendant–
Appellant.**

No. 01–5230.

United States Court of Appeals,
Sixth Circuit.

Feb. 12, 2003.

Before BATCHELDER, COLE, and GIBBONS, Circuit Judges.

BATCHELDER, Circuit Judge.

Defendant Lourele Roberts ("Roberts") pleaded guilty to one count of escape from federal custody, in violation of 18 U.S.C. § 751(a). Roberts now appeals his sentence, arguing that the district court should have been estopped from finding that he was a career offender under USSG § 4B1.1, and in the alternative that a prior conviction for "simple escape" is not a "crime of violence" under USSG § 4B1.2(a). Finding no merit to his claims, we affirm the judgment of the district court.

## Statement of Facts

This appeal concerns what happened in two of Roberts's prior convictions. First, in 1996 Roberts pleaded guilty to a Louisiana state charge for simple escape under La.Rev.Stat. § 14:110(A)(1), which forbids "[t]he intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned," and provides a minimum penalty of two years imprisonment. *Id.* § 14:110(B)(3).

Later, in 1999, Roberts pleaded guilty to a federal charge of armed robbery with a firearm. At the sentencing hearing the Government argued that in light of *United States v. Harris,* 165 F.3d 1062 (6th Cir. 1999), the court should find that the 1996 Louisiana simple escape conviction was a "crime of violence" under USSG § 4B1.2(a), and by adding this crime of violence with a previous crime of violence felony, the court should sentence Roberts as a career offender under USSG § 4B1.1. The district court, however, distinguished *Harris* and determined that this was not a crime of violence: unlike the Tennessee statute at issue in *Harris,* the Louisiana statute has a separate provision for aggravated escape, "the intentional departure of a person ... under circumstances wherein human life is endangered." La.Rev.Stat. § 14:110(C)(1). The Government did not appeal this finding, because it could not: in Roberts's plea agreement the Government had promised it would appeal nothing except a downward departure.

At the sentencing in the conviction Roberts now appeals, the Government again asked the district court to find that his 1996 Louisiana simple escape conviction was a crime of violence under USSG § 4B1.2(a), so the court could sentence him as a career offender under USSG § 4B1.1. The district court found that it was not collaterally estopped from making a new finding, and, determining this time that

*Harris* was indistinguishable and that the simple escape was consequently a crime of violence, the court sentenced Roberts as a career offender.

## Analysis

### I. Collateral Estoppel

We review *de novo* a district court's disposition of the mixed question of whether collateral estoppel applies. *United States v. Sandoz Pharm. Corp.,* 894 F.2d 825, 826 (6th Cir.1990). "Defensive use of collateral estoppel permits a defendant to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost against another defendant." *Patrick v. S. Cent. Bell Tel. Co.,* 641 F.2d 1192, 1199 n. 3 (6th Cir.1980).

It is clear that "[c]ollateral estoppel is included within the scope of the double jeopardy clause of the fifth amendment." *United States v. Jenkins,* 902 F.2d 459, 462 (6th Cir.1990) (citing *Ashe v. Swenson,* 397 U.S. 436, 445–46, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). It is also clear that collateral estoppel can apply in criminal cases even where double jeopardy is not implicated. *See United States v. Johnson,* 697 F.2d 735, 739 (6th Cir.1983). What is unclear, both in the Sixth Circuit and in the other Circuits, is the question presented by this case: whether a defendant can invoke the doctrine defensively in regard to a determination made by a judge in a prior sentencing—particularly where that determination is legal and not factual. *See United States v. Salemo,* 81 F.3d 1453, 1464 (9th Cir.1996) (allowing the possibility of defensive collateral estoppel, but for various reasons refusing to apply it where one district court refused to apply an upward departure, but another district court—looking at the same facts—did apply an upward departure); *United States v. Rush,* 840 F.2d 580, 582 (8th Cir.1988)

(considering the possibility of defensive collateral estoppel where the defendant had not been sentenced under the Armed Career Criminal Act in a prior federal conviction, even though he had the requisite predicate offenses, but in the instant conviction he was sentenced under that Act, and holding that the doctrine did not apply because there was no evidence that the prior federal court had known of the predicate offenses).

■ We find it unnecessary to delve into the intricacies of this difficult question, because it is apparent that even assuming that the doctrine applies in this situation, on the facts of this case the district court would not be collaterally estopped. Among the various requirements for collateral estoppel is the condition that "the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Detroit Police Officers Ass'n v. Young*, 824 F.2d 512, 515 (6th Cir.1987) (footnote omitted). The Government did not have a full and fair opportunity to litigate this issue in the 1999 case, because it had promised in the plea bargain not to appeal anything but a downward departure. *See Standefer v. United States*, 447 U.S. 10, 23 n. 18, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) ("The estoppel doctrine . . . is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted."); *Salemo*, 81 F.3d at 1464 ("The inability of a party to appeal from an adverse determination in the prior proceeding is a major factor to be considered [in determining whether there was full and fair opportunity].") (citing *Standefer*, 447 U.S. at 22–24). We conclude that the district court was not collaterally estopped from making a legal finding contrary to its prior finding.

## II. Whether Simple Escape is a "Crime of Violence"

We review *de novo* a district court's determination that a defendant is a career offender for sentencing purposes. *United States v. Wood*, 209 F.3d 847, 849 (6th Cir.2000). The district court could find that Roberts was a career offender only if it first found that his Louisiana simple escape was a "crime of violence":

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) . . . otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).

In *Harris* we considered a Tennessee statute that made it a felony for "any person confined in a county workhouse or jail or city jail or municipal detention facility upon any charge of or conviction of a criminal offense constituting a felony [to] escape or attempt to escape therefrom . . . ." 165 F.3d at 1067 (quoting the former Tenn.Code Ann. § 39–5–706). We held that "the crime of escape, by its nature, presents a serious potential risk of physical injury and thus constitutes a crime of violence," relying on the oft-quoted "powder keg" rationale first asserted in a Tenth Circuit case: "[E]very escape scenario is a powder keg, which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." *Id.* at 1068 (quoting *United States v. Gosling*, 39 F.3d 1140,

1142 (10th Cir.1994)). We also established that district courts should adopt a "categorical approach," looking primarily to the statute rather than the individualized facts:

In answering this question [of whether a given offense is a crime of violence], our caselaw teaches, the district court was not free to conduct a "broad factual inquiry" into what [the defendant] actually did in the course of his escape.... The approach to be followed by a sentencing court, rather, is "categorical" in nature; it requires the court to base its determination on the statutory definition of the crime.

*Id.* (citations omitted). In cases since *Harris* we have continued to apply this methodology. *See United States v. Rodgers,* 2000 U.S.App. LEXIS 25250, at *14, 2000 WL 1434706, 230 F.3d 1361 (6th Cir. Sept. 19, 2000); *United States v. Houston,* 187 F.3d 593, 594–95 (6th Cir.1999); *see also United States v. Turner,* 285 F.3d 909, 915–16 (10th Cir.2002).

The Louisiana simple escape statute, to review, penalizes "[t]he intentional departure [of a prisoner] under circumstances wherein human life is not endangered," La.Rev.Stat. § 14:110(A)(1), and this offense is punished by imprisonment "with or without hard labor for not less than two years nor more than five years." *Id.* § 14:110(B)(3). The elements of simple escape, as construed by Louisiana courts, are: "(1) an intentional departure (2) under circumstances wherein human life is not endangered (3) by a person detained (4) from the lawful custody of [the Department of Public Safety and Corrections]." *State v. Bullock,* 576 So.2d 453, 455 (La. 1991). A separate provision in the same Louisiana statute forbids aggravated escape, "the intentional departure of a person ... under circumstances wherein human life is endangered," *id.* § 14:110(C)(1),

and the penalty here is five to ten years at hard labor. *Id.* § 14:110(C)(2). This latter offense requires a finding, beyond a reasonable doubt, that the defendant's conduct endangered human life. *State v. Arnold,* 801 So.2d 408, 421 (La.Ct.App.2001).

Roberts argues that we should distinguish *Harris,* because in the present case the statute itself excludes situations where human life is in danger, and hence by looking only to the statute we can categorically find that the offense did not "involve[ ] conduct that present[ed] a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). But Roberts's argument fails for two reasons. First, we note that § 4B1.2(a)(2), on its face, requires that the seriousness must reside in the risk, and not necessarily in the injury. A conviction under the Louisiana simple escape statute establishes only that human life was not endangered, and it does not establish categorically that the escapee will not have risked physically injuring another. Second, the Louisiana statute focuses on the danger posed by the escape itself, whereas *Harris* focuses on the danger entailed in capturing the escapee. Under the *Harris* categorical approach, the "powder keg" of danger in recovering an escaped prisoner exists even if his actual escape went entirely unnoticed.

## Conclusion

We AFFIRM the judgment of the district court.