NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0617n.06
Filed: October 15, 2008

No. 07-5775

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Alice Marie Stapleton, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: MOORE and COLE, Circuit Judges, and GRAHAM,[*] District Judge.

GRAHAM, District Judge. Defendant-Appellant Alice Marie Stapleton ("the defendant") appeals the judgment of conviction entered in the United States District Court for the Eastern District of Kentucky. Defendant was charged by a second superseding indictment filed on December 21, 2006, with: conspiracy under 18 U.S.C. § 371 to provide an inmate at a federal prison with prohibited objects and to obtain prohibited objects inside the prison, namely heroin, marijuana and cell phones, in violation of 18 U.S.C. §§ 1791(a)(1) and (2) (Count 1); conspiracy under 21 U.S.C. § 846 to distribute heroin (Counts 2, 3 and 4) and marijuana (Count 6) in violation of 21 U.S.C. § 841(a)(1); possession with the intent to distribute heroin (Count 5) and marijuana (Count 7) in violation of § 841(a)(1); and attempting to provide an inmate at a federal penitentiary with prohibited objects (heroin, marijuana, and two cellular telephones) in violation of 18 U.S.C. §1791(a)(2)

_____

[*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

(Count 8).

Personne McGhee, Clady McGhee, Grady Perry, Kenneth Ray Bates, Maria Mims, and Temeka Halliburton were also named as defendants. The McGhees, Perry, and Halliburton entered guilty pleas. The case against Bates was dismissed on the government's motion. The case against defendant and Mims proceeded to trial before a jury on February 20, 2007. At the end of the government's case and at the conclusion of the evidence, the district court denied defendant's motions for judgment of acquittal pursuant to Fed.R.Crim.P. 29.

On February 23, 2007, the jury returned a verdict of guilty on all counts. Defendant filed a motion for a new trial pursuant to Fed.R.Crim.P. 33 on March 1, 2007. The district court denied the motion by order filed on June 7, 2008. On June 8, 2007, the district court imposed a sentence of sixty months imprisonment on Counts 1 through 7, to run concurrently, and eighteen months on Count 8 to run consecutively. On June 15, 2007, defendant filed a timely notice of appeal.

On appeal, defendant asserts the following claims of error: (1) the district court erred in permitting the government to question three coconspirator witnesses concerning their guilty pleas and in denying her motion for a mistrial prompted by a comment made by Personne McGhee; (2) the district court erred in refusing to instruct the jury on the defense of duress; (3) the district court erred in denying defendant's motions for judgment of acquittal; (4) the district court erred in submitted a redacted copy of the indictment to the jury; (5) the district court erred in instructing the jury regarding the mental state necessary to convict on the drug distribution and possession charges, and in

answering the jury's questions during deliberations; (6) the government acted in bad faith by indicating that a proposed defense witness might be re-indicted if he testified; (7) the district court erred in refusing to grant immunity to the proposed defense witness; (8) the district court erred in denying defendant's motion for a new trial; and (9) defendant is entitled to a new trial due to the above cumulative errors allegedly committed during the trial. For the following reasons, we AFFIRM the judgment of the district court.

## I. Evidence Presented at Trial

The evidence produced at trial by the government revealed that defendant was employed as a correctional officer at United States Penitentiary Big Sandy. Defendant was introduced to inmate Personne McGhee by inmate Kenneth Bates in 2005. In mid-2005, Personne McGhee devised a scheme to import drugs into Big Sandy through a group which also included inmate Sherlone Henderson, Temeka Halliburton (Henderson's girlfriend), inmate David Ward, Maria Mims (Ward's girlfriend), inmate Manny Gordiola, and Clady McGhee (Personne McGhee's mother). Personne McGhee approached defendant and asked her if she would like to make some money. He told her that she would "just have to bring some in through the institution" and offered her a price, and defendant agreed.

In late 2005, Gordiola arranged for heroin to be shipped to Mims in Indianapolis. Personne McGhee told Clady McGhee that he wanted her to pick up some "legal papers," but she later learned he was referring to drugs. In late December, 2005, Clady McGhee and Halliburton went to Indianapolis and picked up the drugs from Mims. Clady McGhee and Halliburton came to the institution, and Clady

McGhee advised Personne McGhee that the package had arrived. Personne McGhee told Clady that a woman guard would be picking up the package at their motel in Paintsville, and gave a description of the defendant. Personne McGhee arranged through his street contacts to have cash delivered to Clady McGhee so that she could pay defendant $800. Personne McGhee instructed his mother to put the heroin in a baby powder bottle. He sent a note to defendant with one of the runners working in the institution to let her know the location of the motel and the room number. Defendant arrived at the motel room, and Halliburton gave her the baby powder bottle containing the heroin and an envelope containing money. The next day, an inmate brought a bottle of baby powder to Personne McGhee from the block where defendant was working. The bottle contained balloons of heroin.

A second delivery of heroin was arranged in March of 2006. Clady McGhee and Halliburton picked up a package from Mims in Indianapolis. Clady McGhee and Halliburton again went to the motel in Paintsville. Personne McGhee instructed them to give defendant $1,000. Personne McGhee sent a letter to defendant by runner to inform her of the location of the motel where she could meet with Clady McGhee. Defendant came to the motel room and picked up the baby powder bottle, and Clady McGhee gave her the money. The next day, Personne McGhee informed Clady McGhee that he had received the baby powder bottle containing 108 portions of heroin wrapped in plastic. Halliburton observed defendant at the prison when they went to visit with Personne McGhee and, recognizing her, learned that defendant was a prison guard.

Gordiola placed another order for heroin in July of 2006.

4

Personne McGhee also arranged for a pound of marijuana and two cell phones to be brought to the institution. Clady McGhee arranged for Grady Perry to take her to Indianapolis to pick up the heroin at Mims' address. Clady McGhee and Perry then went to Columbus, Ohio, and picked up a Tide box and $1,000 from Personne McGhee's half brother, Matt Meyers. Personne McGhee instructed his mother to place a handicap sticker in the window of the motel room so that the defendant would know where to come. Clady McGhee and Perry then went to a motel in Paintsville, and Clady McGhee placed a handicap sticker in the window. Personne McGhee contacted defendant by letter to tell her which motel to go to, and to look for a handicap sticker in the window. McGhee instructed his mother to pay defendant $1,000. The next morning, defendant arrived at the motel about 8:25 a.m. Clady McGhee gave her the money, and defendant picked up the boxes and left.

The evidence further revealed that David Link, a Special Investigative Agent at Big Sandy, began an investigation into drugs being brought into the prison. He received information from an inmate that drugs concealed in baby powder bottles were being carried into the prison by staff. Link was told that a staff member was involved, and defendant's name was mentioned by one inmate. Phone records disclosed that Personne McGhee made phone calls to family members. The term "legal papers" was used in the conversations as a code name for drugs. Mr. Link received information indicating that a delivery of drugs was imminent in mid-July.

On Saturday, July 22nd, Clady McGhee and Grady Perry came to visit with Personne McGhee at the institution. They were followed

5

back to a motel, where surveillance was established by Link and the FBI. Between 8:00 a.m. and 8:30 a.m., defendant arrived at the motel in a white vehicle and entered a motel room. A handicapped parking permit was placed in the window of the motel room. Defendant left the motel room carrying a plastic bag and a detergent box. She drove away in her vehicle, and was pulled over by the Kentucky State Police about a mile up the road.

Defendant gave consent to search her vehicle, and a Tide detergent box, a plastic bag containing a baby powder bottle, and $1,000 in cash were found in the trunk. The Tide box contained a brick of marijuana, which weighed approximately 435 grams, and two cellular telephones with bases and chargers. The baby powder bottle contained a large chunk of black tar heroin weighing approximately 25.285 grams. Defendant informed them about the location of the money in the car.

Defendant was advised of her *Miranda* rights and signed a waiver form. She admitted possessing the items which were found in her car. She also stated that she had brought another shipment into the prison several months before and that she had been paid approximately $800. Defendant stated that she brought the items into the institution in her lunch cooler. Defendant was not placed under arrest at that time. She was later arrested at Big Sandy on July 28, 2006, and signed another rights waiver form. Defendant admitted picking up three shipments at the motel.

Defendant testified at trial that she was threatened by inmate Kenneth Bates in the housing unit around Christmas of 2005. Bates told her personal information about herself and her family, and informed her that she had to bring in a package for him and that he

told her she "had no choice but to do it." Defendant stated that Bates threatened her life. She stated that she did not report Bates because she was scared. She was afraid that if she pressed the alarm button, Bates would hear it and kill her. Bates told her that he had contacts inside and outside the prison. When defendant left work, she went to the motel and obtained a package from Clady McGhee. She denied receiving any money for picking up the package. Defendant brought the package into the institution that evening in her lunch pail and gave it to Bates. Defendant denied knowing what was in the package.

Defendant further testified that two or three months later, Bates told her to pick up another package, and said she had no choice because he would kill her if she didn't do it. She went to the motel and obtained a package from Halliburton, but received no money. Defendant stated she did not know what was in the package. She gave the package to Bates the next night. Defendant did not report Bates, although she "thought about it."

Defendant also testified that on July 23, 2006, Bates came to her office and told her that she had to meet his family again. The evidence included a video tape record of Bates going to talk to defendant in her office on that date. Defendant testified that Bates stated that if she refused, he would kill her, and he showed her a shank and was "really aggressive." Defendant went to the motel, and was told by Clady McGhee to take the Tide box, the plastic bag, and some money which was intended for Bates. After she left the motel, defendant was pulled over by a state trooper, and she showed him where the money was located. She claimed she informed the agents that Bates had threatened her life. She denied

7

knowing what was in any of the packages.

Defendant further testified that she knew that it was a violation of prison policies not to report the threats from Bates. She acknowledged that she knew people in the county sheriff's officer and the Kentucky State Police, and that her uncle was the head of the Big Sandy Regional Detention Center, but stated that she did not contact any of these law enforcement officers about the threats. She admitted that when Bates talked with her on July 23, she did not press her body alarm, use her radio, or phone to call for help, and that she could have left the office and locked Bates in the office while she called for help, but did not do so.

Relative to the duress issue, the government presented testimony that corrections officers are issued radios to communicate with staff, and that some of the radios have body alarms which alert the control center if triggered. Link testified that if an officer leaves a phone off the hook for more than fifteen seconds, a no-dial alarm is sent to the control center, and staff will go to investigate the problem. Link also stated that if an inmate makes a threat to an officer, an incident report should be filed immediately with the shift supervisor. He testified that if defendant felt threatened by an inmate, she could have hit her body alarm, and a correctional officer would have responded within fifteen to twenty seconds. He further stated that defendant could have knocked the telephone off the hook or dialed 222, which would have alerted other staff, and could also have re-entered the office and locked the door.

The government also introduced evidence that corrections officers are given training on how to report incidents involving

8

manipulative inmates.    The officers are trained on reporting threats to supervisors.    Plaintiff received training on how prisoners can corrupt or compromise staff members, and would have been instructed to avoid doing favors for inmates and to report any pressure or threats to her supervisors.    Defendant also received a book which covered coercion and intimidation by inmates.

## II. Assignments of Error

### A.   Questioning of Coconspirators

### 1.   Plea Agreements

Defendant argues that the district court erred in permitting the government to question Personne McGhee, Clady McGhee, and Temeka Halliburton, co-conspirators who testified as government witnesses, about the fact that they had entered into plea agreements.    At the beginning of trial, defendant objected to the government questioning witnesses about pleading guilty to a conspiracy with which defendant was charged.    The court permitted the government to refer to the guilty pleas in its opening statement.    Later, Personne McGhee was questioned concerning his guilty plea to conspiracy and bringing drugs into the institution. Clady McGhee and Halliburton were also asked about their guilty pleas.

Evidentiary rulings of the district court are reviewed for abuse of discretion. *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006).    "Evidence that a coconspirator has been convicted of conspiring with a criminal defendant is generally inadmissible, because it might lead the jury to 'regard the issue of the remaining defendant's guilt as settled and [conclude that] the trial is a mere formality.'"    *United States v. Modena*, 302 F.3d

9

626, 631 (6th Cir. 2002)(quoting *United States v. Griffin*, 778 F.2d 707, 711 (11th Cir. 1985)). However, if the coconspirator testifies at trial, evidence of the coconspirator's prior convictions may be introduced so that the jury can accurately assess his credibility. *Id*. If the evidence is admitted, the district court must instruct the jury that it may not consider the coconspirator's prior conspiracy conviction as evidence of the defendant's guilt. *United States v. Sanders*, 95 F.3d 449, 454 (6th Cir. 1996)("When a guilty plea or conviction is introduced into evidence, the district court is required to give a cautionary instruction to the effect that the jury may use the conviction or guilty plea only to determine the testifying witness's credibility.").

In this case, the three coconspirators testified at trial as witnesses for the government. The government was properly permitted to question them on direct examination about their guilty pleas and conspiracy convictions "in order to 'remove the sting' of any attempt to impeach [their] credibility with [their] conviction[s] on cross-examination." *Modena*, 302 F.3d at 632; *see also Sanders*, 95 F.3d at 454 (holding that guilty pleas of government witnesses were properly admitted for credibility purposes).

The district court gave a cautionary instruction to the jury during Personne McGhee's testimony:

> As part of that testimony, you heard evidence that Mr. McGhee pled guilty to certain charges in this crime. You may not consider that fact, in other words, his guilty plea, as evidence of Ms. Stapleton's guilt or Ms. Mims's guilt, it may only be used to assess the credibility of Mr. McGhee's testimony in terms of the weight that you would give to Mr. McGhee's testimony.

At the conclusion of the case, the district court again instructed

10

the jury, "The fact that Personne McGhee, Clady McGhee, and Temeka Halliburton have pleaded guilty to a crime is not evidence that the defendants are guilty, and you cannot consider this against the defendants in any way." These cautionary instructions were adequate to ensure that the jury did not use this evidence for an improper purpose.

## 2. Request for a Mistrial

Defendant also argues that the district court should have granted her motion for a mistrial made during Personne McGhee's testimony. During his direct testimony, McGhee was questioned by the government about his motive for testifying in the case. He was asked, "Does your testimony here today violate any sort of inmate code?" He responded, "Yes." He stated that by testifying, his life might be threatened by other inmates at the institution. When asked why he was putting his life at risk by testifying, McGhee responded, "Because I didn't want to put my mother at risk to have to come in here and testify against me. And I wouldn't had [sic] to be here if all parties involved just admitted guilt when they knew they was [sic] guilty." Counsel for defendant then moved for a mistrial, objecting to the witness's suggestion "that my client should have plead guilty as well because they're both charged with the same conspiracy[.]" The district court denied the motion for a mistrial, finding that it was appropriate for the government to question a testifying coconspirator about the fact that he had pleaded guilty.

The district court's ruling on the motion for a mistrial is reviewed for abuse of discretion. *See United States v. Harris*, 165 F.3d 1062, 1066 (6th Cir. 1999). In determining whether improper

11

witness statements affected the substantial rights of the defendant so as to warrant a new trial, the factors to be considered are: (1) whether the government's line of inquiry was reasonable and justified by the circumstances of the witness being questioned; (2) whether there was any showing that the government acted in bad faith or otherwise deliberately injected the witness's stray remarks; (3) whether the remarks were detailed or of major importance when compared with the other evidence against the defendant; and (4) whether a curative instruction was sought or given. *Id.*; *United States v. Terry*, 729 F.2d 1063, 1070 (6th Cir. 1984).

In this case, the government's line of inquiry was reasonable under the circumstances. Counsel for the government indicated that they wanted to bring out the fact that McGhee's motive for testifying was to help his mother avoid jail time for his actions in getting her involved in the offense. Government counsel indicated that they did not know or anticipate that McGhee was going to make the statement about other defendants choosing not to plea guilty, nor did they prompt him to make the statement. This representation is bolstered by the fact that Personne McGhee was not a seasoned law enforcement officer, but a lay witness. The remark was isolated, rather than being "part of a pattern indicative of bad faith," and the stray remark constituted only a small part of the testimony against defendant. *Harris*, 165 F.3d at 1066. Finally, the district court also gave a prompt cautionary instruction to the jury regarding McGhee's comment. After informing the jury that McGhee's guilty plea could not be considered as evidence of defendant's guilt, the court instructed

12

the jury:

> Furthermore, you as a jury are instructed to disregard any comment that the witness might have made on his personal opinions about what other defendants should do in this case. That comment was inappropriate and you should simply just disregard the comment that he made about what other defendants perhaps should do in this case.

The court also gave an instruction on the presumption of innocence. Juries are presumed to understand and follow such directions from the court. *United States v. Forrest*, 17 F.3d 916, 920-21 (6th Cir. 1994)(citing *United States v. Sivils*, 960 F.2d 587, 594 (6th Cir. 1992)).

Considering the relevant factors, the district court did not abuse its discretion in denying the motion for a mistrial. *See United States v. Moore*, 376 F.3d 570, 575 (6th Cir. 2004)(denial of mistrial upheld where single comment was not "of major import" when compared with other evidence, and district court immediately admonished the jury to disregard the comment); *Harris*, 165 F.3d at 1066 (district court did not abuse discretion in denying mistrial where stray remark constituted minuscule part of evidence against defendant, line of questioning was reasonable, the government did not intentionally elicit reference to prior arrest, and court gave an immediate and clear limiting instruction); *Forrest*, 17 F.3d at 921 (mistrial not warranted in light of clear admonition by judge and ample evidence of guilt); *United States v. Hernandez*, 873 F.2d 925, 928 (6th Cir. 1989)(denial of mistrial upheld where improper reference to arrest was unsolicited, government's line of questioning was reasonable, limiting instruction was immediate, clear, and forceful, and reference was only a small part of evidence against defendant).

13

**B.  Refusal to Instruct on Duress Defense**

On January 9, 2007, the government filed a motion *in limine* to preclude defendant from presenting a duress defense at trial.  The court denied the motion without prejudice by order filed on February 8, 2007, stating that the government "may renew its motion at the close of evidence as it relates to potential jury instructions."  Following the charge conference, the court invited argument on whether to instruct the jury on the defense of duress. The government renewed its motion in limine, and the court granted the motion, declining to instruct the jury on the duress defense. The district court found that the defendant failed to establish a prima facie case of duress in regard to the element of the defense which required defendant to show that she had no reasonable legal alternative to violating the law either before or during the event.

This court "reviews jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury." *United States v. Brown*, 367 F.3d 549, 555 (6th Cir. 2004).  A district court's refusal to give a requested jury instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case.  *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993).

Whether a defendant has established a defense of duress is a question of law which this court reviews *de novo*.  *United States v. Johnson*, 416 F.3d 464, 468 (6th Cir. 2005).  A court is not required to instruct the jury on a defense the theory of which is not even

14

supported by the testimony of the defendant. *United States v. Plummer*, 789 F.2d 435, 438 (6th Cir. 1986). "Therefore, where the evidence is insufficient as a matter of law to support a duress defense, a trial judge should exclude that evidence." *Johnson*, 416 F.3d at 468; *see also United States v. Singleton*, 902 F.2d 471, 472-73 (6th Cir. 1990)(defense of duress is appropriate only in rare situations and should be narrowly construed, and an instruction on duress is properly denied "if the evidence could not support a verdict based on it.")(citing *United States v. Bailey*, 444 U.S. 394, 398-99 (1980)).

Under *Singleton*, an instruction on duress is appropriate if the defendant has produced evidence upon which a reasonable jury could conclude by a preponderance of the evidence that each of the following circumstances exist:

> (1) defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) defendant had not recklessly or negligently placed herself in a situation in which it was probable that she would be forced to choose the criminal conduct;
>
> (3) defendant had no "reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm";
>
> (4) a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm; and
>
> (5) defendant did not maintain the illegal conduct any longer than absolutely necessary.

*Singleton*, 902 F.2d at 472-73 (internal quotation marks omitted).

The district court's determination that defendant had failed

15

to present a prima facie case in regard to the third element is well supported by the record. The evidence, including defendant's testimony, reveals that there were several reasonable legal alternatives which defendant could have pursued when faced with Bates's threats, including using the various alarm systems available to officers in the institution and reporting the threats to supervisors as required under the institution's policies.[1] In addition, even assuming that defendant was under an imminent, impending threat of death or serious bodily injury from Bates when he confronted defendant in the institution, that threat was no longer imminent or impending as soon as defendant was no longer in Bates's presence. The district court properly refused to instruct the jury on the duress defense.[2]

## C. Denial of Rule 29 Motions

## 1. Standard of Review

This court reviews *de novo* a denial of a motion for judgment of acquittal. *United States v. McGhee*, 529 F.3d 691, 696 (6th Cir. 2008). The applicable standard is whether, viewing the trial testimony and exhibits in the light most favorable to the

---

[1]Although the district court relied on defendant's failure to proffer evidence regarding the third element, it also appears from the evidence, including defendant's testimony, that the first and fifth elements of the defense were not satisfied. Defendant was not under an imminent threat of death or serious bodily injury from Bates while she was away from the institution picking up the drugs at the motel, and thus she engaged in the illegal conduct longer than absolutely necessary to avoid any immediate threat from Bates while he confronted her in the institution.

[2]Despite this ruling, the issue of duress was indirectly presented to the jury. In charging on the conspiracy counts, the court instructed the jury that in order to convict the defendant, the jury had to find that the defendant "voluntarily" joined the conspiracies. By finding defendant guilty on the conspiracy counts, the jury must have rejected defendant's testimony that she did not voluntarily become involved in the plan to bring contraband into the institution.

16

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003). In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its judgment for that of the jury. *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). The evidence need not exclude every reasonable hypothesis except that of guilt. *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir. 1984).

**2. Duress as Defense to Conspiracy Offenses**

Defendant argues that the district court erred in denying her Rule 29 motion in light of her duress defense, and further argues that the evidence was insufficient to show that she willingly became a member of the conspiracies alleged in the indictment. However, the defense of duress presents an issue which is separate and apart from the elements of the conspiracy offenses. The elements of a drug conspiracy under 21 U.S.C. § 846 are: (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Caver*, 470 F.3d 220, 232-33 (6th Cir. 2007). In order to convict defendant for conspiracy in violation of 18 U.S.C. § 371, the government was required to prove: (1) the existence of an agreement to violate the law; (2) the defendant's knowledge and intent to join the conspiracy; and (3) an overt act constituting actual participation in the conspiracy. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007).

The duress defense "does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to

17

have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability ... because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" *Dixon v. United States*, 548 U.S. 1, 7 (2006)(quoting *Bailey*, 444 U.S. at 402). Thus, the fact that defendant claimed to have acted involuntarily while under duress does not undermine the government's proof on the issue of whether defendant knowingly and intentionally joined the conspiracies.

The government produced evidence sufficient to permit a rational trier of fact to conclude that defendant knowingly and intentionally became a part of the charged conspiracies. Personne McGhee testified that he approached defendant and asked her if she would like to make some money. He told her that she would "just have to bring some in through the institution" and offered her a price, and defendant agreed. Defendant admitted picking up packages on three occasions and smuggling the first two packages into the institution in her lunch cooler. There was also testimony that defendant was paid for her part in the conspiracy. The testimony of Clady McGhee and Kim Halliburton establishes that defendant was paid $800 for the first delivery and $1,000 for the second and third deliveries. There was also evidence that defendant admitted receiving $800 for one delivery, and that she was found to be in possession of $1,000 after picking up packages on the third occasion. The jury could reasonably infer from this evidence that the defendant participated in the conspiracies knowingly and intentionally.

As previously stated, defendant did not produce sufficient evidence to establish a duress defense, and the district court

18

properly determined that defendant had failed to proffer evidence sufficient to establish the defense of duress or to warrant an instruction on that defense. Even if defendant had successfully proffered sufficient evidence to warrant a jury instruction, the issue of duress would have presented a fact question for the jury; defendant was not entitled to judgment as a matter of law on her duress defense. The district court did not err in denying defendant's Rule 29 motions on the conspiracy counts based on her duress defense.

## 3. Knowledge of Contents of Packages

Defendant also argues that the evidence was insufficient to support her conviction on the drug charges because the government failed to show that she had knowledge that the packages she picked up contained controlled substances.

The elements of the offense of distribution of a controlled substance under 21 U.S.C. § 841(a)(1)[3] are that (1) the defendant knowingly; (2) distributed a controlled substance. <u>United States v. Forrest</u>, 17 F.3d 916, 919 (6th Cir. 1994). The elements of the offense of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) are that "(1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute." *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). The elements of a drug conspiracy under 21 U.S.C. § 846 are: (1) an agreement to violate drug laws; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy. *Caver*, 470 F.3d at 232-33.

---

[3]21 U.S.C. § 841(a)(1) provides that "it shall be unlawful for any person knowingly or intentionally–(1) to ... distribute, ... or possess with intent to ... distribute, ... a controlled substance[.]"

19

To prove an offense under § 841(a)(1), the government is not required to show that the defendant knew the exact type or quantity of the controlled substance involved. *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003)(§ 841(a)(1) requires nothing more specific than an intent to distribute a controlled substance; "drug type and quantity are irrelevant to the mens rea element of § 841(a)(1)")(citing *United States v. Garcia*, 252 F.3d 838, 844 (6th Cir. 2001)). Rather, the government is only required to prove that the defendant knew that the substance was some type of controlled substance. *Villarce*, 323 F.3d at 439. This burden also applies to conspiracies to violate § 841(a)(1) under §846. *Id*. at 439 n. 1. Circumstantial evidence, standing alone, can sustain a guilty verdict. *United States v. Jones*, 124 F.3d 781, 784 (6th Cir. 1997).

Evidence was introduced that defendant had received training on not doing favors for prisoners, the possession by inmates of contraband such as drugs, and the problems created by gangs dealing drugs within the prison. There was testimony that corrections officers are also instructed that it is illegal to bring contraband such as drugs to inmates.

Personne McGhee testified that he asked defendant if she would be interested in making some money, and she agreed that she would because she was trying to make some money to pay for her schooling. McGhee was asked, "What did you tell her that she would have to do to make the money?" and he responded, "She would just have to bring some in through the institution." Although he did not clarify what he meant by "some," this testimony occurred in the context of his testimony concerning his plans for obtaining drugs to sell in the institution. There was also evidence that on the occasion of the

20

last delivery, defendant called Clady McGhee's cell phone and stated, "I'm calling about the legal papers." The reference to "legal papers" was the same code term for drugs used by Personne McGhee while speaking on the phone with Clady. Personne McGhee also testified that "legal work" was a code name for drugs in the institution.

Defendant was paid $800 for the first delivery and $1,000 for the next two deliveries. Since this was a substantial amount of money to deliver something small enough to be concealed in a baby powder bottle, the jury could reasonably conclude that defendant would know that the contents were something that would be of considerable value to McGhee and other inmates, such as controlled substances. The jury could also reasonably find that it would be unreasonable for defendant to conclude that the packages contained cash, since there was testimony that cash is of no value to an inmate because the medium of exchange at the institution is stamps, and an inmate cannot deposit cash into his account.

The value of the controlled substances was revealed by Personne McGhee's testimony. The first shipment contained three ounces of heroin, which could be sold in the prison for up to $1,500 per gram. McGhee also testified that the third shipment included a pound of marijuana, which could be sold for $15 for one "joint", and up to $1,000 to $1,500 per ounce. McGhee also testified that he was serving a sentence for drug distribution at the institution.

In light of the circumstances in evidence, including defendant's training as a corrections officer, the jury could reasonably conclude that defendant was aware that the packages

21

contained a controlled substance, and the district court did not err in denying defendant's Rule 29 motions on the drug counts.[4]

## D. Submission of Redacted Copy of Indictment to the Jury

Defendant argues that it was error for the district court to submit a written copy of the indictment to the jury which deleted the reference to Kenneth Bates, who was previously dismissed as a defendant. Defense counsel objected to sending a written copy of the indictment to the jury, but also stated that if the court decided to give the jury a copy, it should be an accurate copy.

"The decision whether to strike language from an indictment rests within the sound discretion of the district court." *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001). "A court does not err in ignoring irrelevancies in or striking surplusage from an indictment." *United States v. Grenoble*, 413 F.3d 569, 577 (6th Cir. 2005)(citing *United States v. McGuire*, 744 F.2d 1197, 1206 (6th Cir. 1984)(holding that it was not error to delete the name of a dismissed defendant from the indictment as surplusage)). Since Bates was no longer a defendant in the case, it was permissible for the district court to delete his name from the indictment as surplusage. Defendant was not entitled to have Bates's name remain simply to bolster a duress defense which the trial court properly ruled was inadequate to submit to the jury.

---

[4]In addition, the district court also gave an instruction on deliberate ignorance, which will be discussed *infra.* The concept of deliberate indifference permitted the jurors to conclude that the element of knowledge had been proved if they were convinced beyond a reasonable doubt that the defendant was aware of a high probability that the packages contained controlled substances or cellular phones, and that she deliberately closed her eyes to the obvious risk that she was engaging in unlawful conduct. *See United States v. Gullett*, 713 F.2d 1203, 1212 (6th Cir. 1983). The evidence presented in this case would have permitted the jury to find that, at the very least, defendant acted with deliberate ignorance.

The decision to submit a written copy of the indictment to the jury is reviewed under an abuse of discretion standard. *United States v. Smith*, 419 F.3d 521, 527 (6th Cir. 2005). A district court acts within its discretion in reading the indictment to the jury, a practice which helps to inform the jury of the charges against the defendant. *Id.* at 530 (citing *United States v. Maselli*, 534 F.2d 1197, 1202 (6th Cir. 1976)). However, if the court furnishes a copy of the indictment to the jury, it must give a limiting instruction "to the effect that the indictment is not to be considered evidence of the guilt of the accused." *United States v. Scales*, 594 F.2d 558, 561-62 (6th Cir. 1979); *United States v. Baker*, 418 F.2d 851, 852-53 (6th Cir. 1969).

Here, the court gave a limiting instruction, telling the jury: "The indictment is not any evidence at all of guilt[]. It is just the formal way that the government tells the defendants what crimes they are accused of commit[ing]. It does not even raise any [suspicion] of guilt[]." The court later referred to the counts in the indictment by number while describing the charges contained in the individual counts while noting that the government was only required to prove an agreement to commit one of the crimes described in the conspiracy count, and while instructing the jury that the government was required to prove only one of the overt acts alleged in the indictment. These references did not convert the indictment into evidence, but rather assisted the jury in distinguishing the eight counts in the indictment and the instructions relevant to each. The district court did not abuse its discretion in providing the jury with a redacted copy of the indictment.

23

**E. Jury Instructions**

**1. Instructions on Knowledge and Deliberate Ignorance**

Defendant argues that the district court erred in giving instructions which allegedly led the jury to believe that it need not find that defendant knew that the contents of the packages contained a controlled substance. Although the defendant's arguments are unclear, the gist appears to be that the trial court should have told the jury that in order to convict on the possession counts, the jury had to find that defendant knew that the packages contained heroin and marijuana specifically.

The district court's choice of jury instructions is reviewed according to an abuse of discretion standard. *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir. 2001). In reviewing jury instructions, the test is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury. *United States v. Layne*, 192 F.3d 556, 574 (6th Cir. 1999). Trial courts have broad discretion in drafting jury instructions. *United States v. Prince*, 214 F.3d 740, 761 (6th Cir. 2000). The charge must be considered as a whole. *Id*.

Defendant complains that the trial court did not tell the jurors that they were required to find that the defendant knew the packages contained heroin and marijuana. This was not error. As previously stated, the government is only required to prove that the defendant knew that the substance was some type of controlled substance. *Villarce*, 323 F.3d at 439. The district court also gave a general instruction on deliberate ignorance which applied to all of the charges in the case:

> Next I want to explain something about proving a defendant's knowledge. No one can avoid responsibility

24

for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that the packages contained controlled substances and/or cellular phones, then you may find that she knew the packages contained controlled substances and/or cellular phones. But, to find this, you must be convinced beyond a reasonable doubt that the defendant was aware of a high probability that the packages contained controlled substances and/or cellular phones, and that the defendant deliberately closed her eyes to what was obvious. Carelessness, or negligence, or foolishness on her part is not the same as knowledge, and it is not enough to convict. This, of course, is all for you to decide.

This instruction basically mirrored Sixth Circuit Pattern Jury Instruction 2.09, which was upheld in *United States v. Mari*, 47 F.3d 782, 785 (6th Cir. 1995). Based on the evidence, this instruction was appropriate. *See United States v. Springer*, 262 Fed.App'x 703, 706 (6th Cir. Feb. 1, 2008)(upholding instruction on deliberate ignorance in case involving deputy jailor transporting packages containing drugs to inmate in exchange for payments of $1,000 on two occasions).

## 2. Supplemental Instructions

During deliberations, the jury sent a note to the judge asking a "Question on Count 7." The jury wrote, "In order to be convicted of possession with intent to distribute, would the defendant have to know exactly or in exact detail what they possess. For example, marijuana or knowingly possess that specific substance." As to Count 8, the jury also noted, "Also, we need the definition of 'to wit' within the context it is used." Count 8 charged defendant with attempting to provide prohibited items to an inmate, "to wit, the controlled substances heroin and marijuana, and two cellular telephones." The government requested that the jury be told in

25

response that the defendant does not have to know the exact nature of the substance, but rather simply that it is a controlled substance. Defense counsel objected to any additional instructions being given, and suggested that the jury be told to re-read the previous instructions.

The district court wrote in response to the question on Count 7: "The government need not prove that the defendant knew the type and amount of a controlled substance that she possessed; the government need only show that the defendant knew that she possessed some controlled substance." In response to the question on Count 8, the court wrote: "In this context 'to wit' means 'that is to say.'"

Defendant argues that the jury's request for a definition of the term "to wit" demonstrated that the jury was confused about whether defendant had to have knowledge that the packages contained a controlled substance. However, that argument reads too much into the question. The jury simply requested a definition of the meaning of the phrase "to wit" and the district court provided that definition. Defendant further argues that since the trial court did not specifically refer to marijuana in answering the question regarding Count 7, the jury could have concluded that the cell phones were a controlled substance. This argument is not well taken in light of the court's previous instructions on the elements of Count 7, which told the jurors that they had to find that the defendant "knowingly and intentionally possessed a mixture or substance containing a detectable amount of marijuana, a Schedule I controlled substance" and defined "controlled substance" as "a drug or other substance included in the Schedule I of the federal

26

drug laws, and would include marijuana."

## 3. Rule 43 Error

Defendant also raises as error the fact that the judge drafted a written response to the jury's questions and had a court security officer deliver the response to the jury rather than returning the jury to the courtroom for additional instructions. Defense counsel did not object to this procedure at trial. Since there was no objection, the convictions may be reversed only if the manner of transmitting the supplemental instructions constituted plain error. *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994). Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice. *Id*.

Pursuant to Fed.R.Crim.P. 43, "[t]he defendant shall be present at ... every stage of the trial[.]" Fed.R.Crim.P. 43(a). Therefore, "it is settled law that the district court is required to follow the same procedure in giving supplemental instructions as in giving original instructions." *Combs*, 33 F.3d at 669. The court must respond to the jury's question in open court and in the presence of the parties and counsel for both sides. *Id*. However, any violation of Rule 43 must be considered together with Fed.R.Crim.P. 52(a), which provides that harmless error is to be disregarded. *United States v. Harris*, 9 F.3d 493, 499 (6th Cir. 1993)(violation of Rule 43 will not result in reversal if there is no reasonable possibility of prejudice).

In this case, there was a technical violation of Rule 43 because the jury was not brought back into the courtroom; rather, the court sent the response to the jury's questions in writing.

However, the record indicates that the defendant and all counsel were present in the courtroom after the jury's note was received by the court, and the court heard arguments from counsel in the presence of the defendant concerning what response should be given. Counsel were informed of the contents of the judge's note before it was given to the jury and had the opportunity to raise objections. Thus, this is not a case where the judge acted *ex parte*, with no input from the parties or counsel, in answering the jury's questions. The responses of the court to the jury's questions were brief and correct. Under these circumstances, defendant cannot show that she suffered any prejudice because the jury was not physically returned to the courtroom to receive the answers to the questions.

## F. Defense Attempts to Call Kenneth Bates as a Witness

### 1. Prosecutorial Misconduct

Defendant argues that she was unable to call Kenneth Bates as a witness in support of her duress defense because of alleged prosecutorial misconduct. A defendant's right to present his or her own defense witnesses constitutes "a fundamental element of due process." *Washington v. Texas*, 388 U.S. 14, 19 (1967); *Johnson v. Bell*, 525 F.3d 466, 480 (6th Cir. 2008). Prosecutorial and judicial actions aimed at discouraging defense witnesses from testifying may deprive a defendant of this right. *United States v. Roach*, 502 F.3d 425, 437 (6th Cir. 2007). Governmental conduct must amount to a substantial interference with a witness's free and unhampered determination to testify before a violation of due process or the Sixth Amendment may be found. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995). Even when interference occurs, a

28

violation of a defendant's right to call witnesses is subject to harmless-error analysis. *United States v. Foster*, 128 F.3d 949, 953 & n. 4 (6th Cir. 1997).

The fact that a witness decides to invoke his or her Fifth Amendment right not to testify does not deny the defendant seeking to call that witness a fair trial. "*Washington v. Texas* does not hold that a defendant has the right to present any and all witnesses." *Davis v. Straub*, 430 F.3d 281, 290 (6th Cir. 2005). As the Supreme Court stated in *Washington*, "Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination[.]" *Id.*, 388 U.S. at 23 n. 21.

During trial, counsel for defendant informed the court that he was planning on calling Kenneth Bates as a witness. The government had previously filed a motion to dismiss the case against Bates on January 30, 2007, on the ground that the government did not feel that it could meet its burden of proof beyond a reasonable doubt against Bates at that time. The motion to dismiss was granted on February 1, 2007, although the court did not specify whether the dismissal was with or without prejudice.

After defense counsel revealed his intention to call Bates as a defense witness, the district court determined that the Rule 48 dismissal of the charges against Bates was a dismissal without prejudice, noting that the court did not believe that the government sought the dismissal for some kind of improper purpose. Bates was examined *in camera* after being given the opportunity to confer with counsel. He refused to answer questions, invoking his Fifth Amendment privilege on the advice of his advisory attorney.

The government indicated that it might re-indict Bates based on his testimony.  Based on the questions posed by defense counsel, the district court ruled that Bates could invoke his Fifth Amendment privilege.

Defendant argues that the government engaged in misconduct by dismissing the charges against Bates, then advocating that the dismissal was without prejudice.  Defendant has not shown how the dismissal, in itself, interfered in any way with her plan to call Bates as a witness.  In regard to the government's argument that the dismissal should be without prejudice, this court has noted that the government is normally free to dismiss one indictment under Rule 48(a) and bring another indictment based on further development of the case.  *United States v. Newsome*, 887 F.2d 1088 (table), 1989 WL 123235 (6th Cir. Oct. 17, 1989)(citing *United States v. Mendenhall*, 597 F.2d 639, 641 (8th Cir. 1979)).  The primary purpose of Rule 48(a) is the "protection of the defendant's rights ... 'to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy.'"  *United States v. Salinas*, 693 F.2d 348, 351 (5th Cir. 1982)(quoting *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965)).  Under Rule 48(a), courts must grant prosecutors leave to dismiss charges unless dismissal is "clearly contrary to manifest public interest."  *Rinaldi v. United States*, 434 U.S. 22, 30 (1977); *United States v. Robertson*, 45 F.3d 1423, 1437 n. 14 (10th Cir. 1995)(courts are vested only with limited supervisory power of prosecutorial charging decisions specifically under Rule 48(a)).

As the district court found, there is nothing in the record to suggest that the government moved to dismiss the charges against

Bates for an improper purpose. There is no indication in the record that Bates, the person Rule 48 was designed to protect, ever objected to the dismissal of the indictment. Although the original order did not specify that the dismissal was without prejudice, the district court noted that dismissal pursuant to Rule 48(a) "is presumed [to be] without prejudice unless the order specifically notes otherwise." (Citing *United States v. Ortega-Alvarez*, 506 F.2d 455, 458 (2d Cir. 1974)). The district court further concluded that since the government had never presented any proof against Bates, jeopardy had not attached, citing *Dortch v. United States*, 203 F.2d 709, 710 (6th Cir. 1953)("It is also settled law that a nolle prosequi and a dismissal without prejudice do not bar a second prosecution for the same offense, inasmuch as such terminations are not tantamount to acquittal.").

Counsel for the government noted during a conference with the court that "the probability, the very real probability exists that if Mr. Bates takes the stand and is subject to direct and then cross-examination, he may well fill in the blanks, so to speak, or give the Government additional information" which would warrant charges being brought against him. The court then arranged for Bates, who had been representing himself, to consult with his advisory counsel. The court then permitted defendant's counsel to conduct a voir dire examination of Bates, and Bates refused to answer the questions, invoking his Fifth Amendment right not to incriminate himself. The government then reiterated its position to the court on the privilege issue, noting that "the United States may well, based on what they hear from this witness, revisit and perhaps re-indict[.]" The decision to re-indict Bates if he

31

provided new evidence during his testimony was a matter within the government's discretion.  There is no evidence that the government engaged in threatening behavior or intimidated Bates in any way to discourage him from testifying.

The instant case is similar to *Davis*.  In that case, the prosecutor requested a sidebar with the judge and informed the court that the witness was a suspect and should be informed of his constitutional rights.  430 F.3d at 287.  The judge questioned the witness briefly and appointed counsel to advise the witness.  *Id*.  The court stated, "Neither the prosecutor's nor the judge's conduct was unconstitutional, especially considering the ethical obligation, imposed on prosecutors by the ABA's model guidelines, to" advise a witness of his or her rights against self-incrimination.  *Id*., citing ABA Standards for the Administration of Criminal Justice § 3-3.2(b).  This court upheld the state courts' determination that the prosecutor did not intimidate the witness into invoking the privilege.  *Id*.

In this case, defendant has failed to show evidence of governmental conduct amounting to a "substantial interference with a witness's free and unhampered determination to testify[.]" *Roach*, 502 F.3d at 437.  The district court's decision to permit Bates to invoke his Fifth Amendment right not to testify was not erroneous. Finally, even assuming that defendant was improperly denied Bates's testimony, any error was harmless because it is not clear that Bates's testimony would have supported her duress defense.  The record demonstrates that defendant would have been unable to establish a defense of duress even if Bates's testimony was favorable to her defense.

32

## 2. Refusal to Grant Immunity

Defendant argues that Bates should have been granted immunity so that she could call him as a witness. After Bates indicated that he would invoke his Fifth Amendment right not to testify, counsel for defendant requested that the trial court grant Bates immunity. The court concluded that it did not have the authority to grant witness immunity, and the government indicated that it was not prepared to grant immunity because it might decide to re-indict Bates depending on his testimony.

Defendant's challenge to the decision of the prosecution and the court not to grant immunity to Bates is without merit. *See Emuegbunam*, 268 F.3d at 401. "No court has authority to immunize a witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 261 (1983); *United States v. Talley*, 164 F.3d 989, 997 (6th Cir. 1999)(district court is without authority to grant immunity to a witness who asserts his Fifth Amendment privilege or to force the government to do so). Rather, 18 U.S.C. §6003 gives the executive branch sole authority to grant use immunity to a witness; it does not require the government to grant a defense witness immunity. *United States v. Mohney*, 949 F.2d 1397, 1401 (6th Cir. 1991).

Defendant argues that Bates's exculpatory testimony was essential to an effective defense, and that this outweighed the government's interests in declining to offer immunity. However, this court, with one narrow exception,[5] has rejected the effective defense exception. *Emuegbunam*, 268 F.3d at 401. This court has

---

[5]The judicial remedy of compelled immunity may be appropriate where the government's selective grant of immunity to its own witnesses while denying immunity to defense witnesses might deprive a defendant of a fair trial. *Talley*, 164 F.3d at 997. No such selective grant of immunity occurred in this case.

33

also noted, without deciding the issue, that immunity may also be warranted to remedy prosecutorial misconduct where the defendant meets "the high threshold" of establishing that the prosecution has deliberately distorted the judicial fact-finding process. *Id*. However, no such showing of misconduct has been made in this case. In addition, "this theory allows the prosecution to refuse to grant immunity to a defense witness when it does not wish to hinder a future criminal prosecution of the witness." *Id*. In *Emuegbunam*, the government informed the district court that it intended to leave open the possibility of criminal liability in the event that the witness perjured himself or implicated himself in additional drug transactions. *Id*. The government made a similar statement to the court in this case.

The district court did not err in declining to grant Bates immunity.

## G. Denial of Motion for a New Trial

Defendant argues that the district court erred in denying her motion for a new trial. The denial of a motion for a new trial is reviewed for abuse of discretion. *United States v. Dupree*, 323 F.3d 480, 484 (6th Cir. 2003). This court will not reverse absent a clear abuse of discretion. *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995). The defendant bears the burden of proving that a new trial should be granted. *Id*. Claims of prosecutorial misconduct are reviewed for clear error. *Id*.

In her motion for a new trial, defendant argued that she was deprived of a fair trial by the government's introduction into evidence of the plea agreements of Halliburton, Clady McGhee and Personne McGhee and the government's assertion of the possibility

34

of re-indicting Bates depending on his testimony, which allegedly prompted Bates's invocation of his Fifth Amendment right not to testify. The district court denied the motion by order filed on June 7, 2008. The court adhered to its previous ruling that the government was permitted to question its witnesses concerning their plea agreements, and noted that the appropriate limiting instructions were given.

The trial court also rejected the defendant's argument that the government had dismissed the charges against Bates so that he would be unavailable as a witness. The court noted that "there is no evidence that the government moved to dismiss Kenneth Bates for any reason other than an inability to meet their burden of proof at trial." The court concluded that the dismissal "was presumably without prejudice to potential re-indictment of Mr. Bates" and that therefore he had a Fifth Amendment right not to testify. The trial court also observed that there was no evidence that Bates would have provided testimony consistent with defendant's duress defense, and that, in fact, defendant had previously moved for severance of her case from that of Bates due to antagonistic defenses. The court stated that since Bates had maintained in pretrial proceedings and pleadings that he and defendant had a consensual intimate relationship and that he never threatened her in any way, he could have been prosecuted for perjury if he had testified in support of her duress defense, and was therefore entitled to invoke his Fifth Amendment privilege. Finally, the court concluded that since defendant failed to meet her preliminary burden of producing sufficient evidence of the "imminence" or "lack of a reasonable legal alternative" elements of the duress defense, she was not

35

prejudiced by the inability to call Bates as a witness.

As previously discussed above, these rulings were correct, and the trial court did not err in denying defendant's motion for a new trial.

## H. Cumulative Error

Defendant argues that the alleged cumulative errors during trial warrant reversal of her convictions. A defendant may "show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004); *see also United States v. Hines*, 398 F.3d 713, 719 (6th Cir. 2005)("[T]he cumulative effect of individual errors may result in a trial setting that is fundamentally unfair."). However, the cumulative-error analysis permits the court to look only at actual errors, not non-errors. *United States v. Wheaton*, 517 F.3d 350, 372 (6th Cir. 2008); *Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004)(while the cumulation of errors otherwise harmless may require reversal of a conviction, the accumulation of non-errors cannot collectively amount to a violation of due process).

In this case, aside from the technical violation of Rule 43, there was no error in defendant's trial. This harmless error is insufficient to support reversal.

### III. Conclusion

In accordance with the foregoing, the judgment of the district court is hereby AFFIRMED.