**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0702n.06

**No. 09-2407**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED

*Oct 06, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| GREGORY MAPP, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before: GIBBONS and SUTTON, Circuit Judges; ADAMS, District Judge.[*]

SUTTON, Circuit Judge.   Customs officers found 114,000 ecstasy pills hidden in the cab of Gregory Mapp's truck when he tried to enter the United States from Canada.   Because the government presented sufficient evidence that Mapp knew the pills contained a controlled substance, we affirm his two drug-trafficking convictions.

I.

Something did not look right to United States Customs Officer Emily Ogrodzinski.   It was October 25, 2008, and Gregory Mapp, traveling from Canada into the United States, had just pulled his truck into her inspection lane at the border checkpoint in Port Huron, Michigan.   Officer

_____

[*]The Honorable John R. Adams, United States District Judge for the Northern District of Ohio, sitting by designation.

Ogrodzinski noticed that the headliner in the truck's cab appeared to be bowed out, suggesting something was hidden behind it. She flagged Mapp's truck for further inspection. Officers found a vacuum-sealed plastic bag containing a large number of pills hidden behind a cardboard liner in Mapp's suitcase. This discovery prompted them to bring in a drug dog and an x-ray scanner. The scanner revealed that something was indeed hidden behind the headliner and the drug dog reacted positively to the side panels of the truck. When officers took apart the headliner and the side panels, they found pills—a lot of them, some 114,000 stuffed into 108 separate vacuum-sealed plastic bags. The pills were packaged by color, and many were stamped with popular commercial markings, including the logos for the New York Yankees, Air Jordan, Lexus and Coco Chanel. The pills tested positive for methylene dioxy methamphetamine, known in some places as MDMA and in other places as ecstasy. At approximately $15 to $20 per pill, the street value of the stash was about $2.2 million, which was believed to be the second-largest ecstasy bust in Detroit since 2005.

A federal grand jury indicted Mapp on one count of importing a Schedule I controlled substance into the United States, *see* 21 U.S.C. §§ 952(a), 960(a), and one count of possessing a Schedule I controlled substance with the intent to distribute it, *see* 21 U.S.C. § 841(a)(1). At trial, Mapp's sole defense was that he did not know the pills were a controlled substance, claiming that he thought they were a homeopathic treatment for erectile dysfunction. The jury found Mapp guilty on both counts, and the district court sentenced him to 120 months on count one and 132 months on count two, to run concurrently. Mapp appeals his convictions on one ground—that there was insufficient evidence that he knowingly transported a controlled substance.

II.

This sufficiency-of-the-evidence challenge faces an initial hurdle. Although Mapp moved for acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure at the close of the government's case in chief, he did not renew that motion before the court submitted the case to the jury. Such a failure usually amounts to a forfeiture of a defendant's sufficiency-of-the-evidence objection, *United States v. Damra*, 621 F.3d 474, 494 (6th Cir. 2010), and "limits our review to determining whether there was a manifest miscarriage of justice." *United States v. Street*, 614 F.3d 228, 236 (6th Cir. 2010). Under this demanding standard, we must affirm a conviction unless "the record is devoid of evidence pointing to guilt." *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008).

Despite his failure to renew his Rule 29(a) motion, Mapp argues that we should give fresh review to his claim because the district court, immediately after discharging the jury and without prompting from either party, volunteered that if Mapp had renewed the motion it "would have been duly considered and denied." Trial Tr. at 654–55. Mapp contends that the district court's post-verdict statement retroactively excuses his failure to renew his Rule 29(a) motion "at the close of all the proofs." *Street*, 614 F.3d at 236. That may or may not be the case, but it need not detain us here. Either way, Mapp's sufficiency-of-the-evidence objection fails, whether we give it fresh review or manifest-miscarriage-of-justice review.

We must uphold the jury's verdict if, "after viewing the evidence in the light most favorable to the prosecution," we conclude that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Only one element matters here: whether Mapp knew that the transported pills contained a controlled substance, a requirement for the importation and possession-with-intent-to-distribute charges. *See United States v. Stapleton*, 297 F. App'x 413, 426 (6th Cir. 2008); *United States v. Caseer*, 399 F.3d 828, 841–42 (6th Cir. 2005). The government need not prove that Mapp knew the pills contained MDMA or ecstasy, just that he knew they contained "a controlled substance." *United States v. Gunter*, 551 F.3d 472, 484–85 (6th Cir. 2009).

Several pieces of evidence support the jury's knowledge finding. To name just a few: Mapp went to great lengths to conceal the pills, spending about two hours hiding them in various nooks and crannies in the cab of his truck. Mapp did such a good job that customs officers had to use an x-ray scanner to locate all of the pills. These elaborate efforts at concealment support the inference that Mapp knew the pills were illicit. *See United States v. Fonseca*, 193 F. App'x 483, 491 (6th Cir. 2006); *United States v. Abdulle*, 564 F.3d 119, 127–28 (2d Cir. 2009). Mapp admitted to Immigration and Customs Enforcement Special Agent Ric Adrian that he knew the person who gave him the pills to transport—Wesley "Junior" Horton—was involved with a Jamaican drug trafficking organization. Mapp even knew Horton's street name in that organization, "Tactics." Trial Tr. at 315. Agent Adrian also testified that he often referred to the pills as ecstasy in his conversations with Mapp, and Mapp never protested that he thought the pills were something else. Many of the

pills were marked with commercial logos, a common feature of ecstasy pills. And given the street value of the pills—approximately $2.2 million—the jury could reasonably conclude that Mapp would not have been entrusted with them without knowing what they were. Viewing this evidence in the light most favorable to the government, a rational trier of fact could conclude beyond a reasonable doubt that Mapp knew the transported pills contained a controlled substance.

III.

For these reasons, we affirm.